---

PAUL HENRY JEAN-PIERRE,

                    1:16-cv-05691-NLH

              Plaintiff,

                    **OPINION**

v.

COMMISSIONER OF SOCIAL
SECURITY,

              Defendant.

---

**APPEARANCES:**

BRIAN G. SMITH
COMMUNITY HEALTH LAW PROJECT, INC.
900 HADDON AVE.
SUITE 400
COLLINGSWOOD, NJ 08108
    On behalf of Plaintiff

MAIJA PELLY DIDOMENICO
SOCIAL SECURITY ADMINISTRATION
OFFICE OF THE GENERAL COUNSEL
300 SPRING GARDEN STREET
SIXTH FLOOR
PHILADELPHIA, PA 19147
    On behalf of Defendant

**HILLMAN**, District Judge

    This matter comes before the Court pursuant to Section 205(g)
of the Social Security Act, as amended, 42 U.S.C. § 405(g),
regarding Plaintiff's application for Supplemental Security Income
("Social Security benefits") under Title XVI of the Social
Security Act.  42 U.S.C. § 401, et seq.  The issue before the
Court is whether the Administrative Law Judge ("ALJ") erred in

finding that there was "substantial evidence" that Plaintiff was not disabled at any time since his alleged onset date of disability, July 2, 2011. For the reasons stated below, this Court will affirm the ALJ's decision.

## I. BACKGROUND AND PROCEDURAL HISTORY

On December 12, 2011, Plaintiff, Paul Henry Jean-Pierre, who was forty-four years old at the time, applied for benefits alleging disability since July 2, 2011. Plaintiff's impairments include status-post colon cancer, degenerative disc disease of the lumbar spine, history of migraines, obesity, major depressive disorder and personality disorder. Plaintiff has no prior work experience for which he reported earnings.[1]

After the state agency denied Plaintiff's application twice, Plaintiff requested an administrative hearing. Two hearings were held before an ALJ on June 5, 2015 and February 11, 2016. On June 29, 2016, the ALJ issued his decision, which determined that Plaintiff was not disabled. On August 30, 2016, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. Plaintiff brings

---

[1] The record shows that Plaintiff earned an associate's degree in travel and tourism and a bachelor's degree in computer science, and he worked as a chess instructor and earned money from playing chess in informal competitions.

this civil action for review of the Commissioner's decision.

## II.  DISCUSSION

### A.    Standard of Review

Under 42 U.S.C. § 405(g), Congress provided for judicial review of the Commissioner's decision to deny a complainant's application for Disability Insurance Benefits.  Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995).  A reviewing court must uphold the Commissioner's factual decisions where they are supported by "substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992).  Substantial evidence means more than "a mere scintilla."  Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id.  The inquiry is not whether the reviewing court would have made the same determination, but whether the Commissioner's conclusion was reasonable.  See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).

A reviewing court has a duty to review the evidence in its totality.  See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984).

"[A] court must 'take into account whatever in the record fairly detracts from its weight.'" Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting Willbanks v. Secretary of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988) (quoting Universal Camera Corp. V. NLRB, 340 U.S. 474, 488 (1951)).

The Commissioner "must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)).  The Third Circuit has held that an "ALJ must review all pertinent medical evidence and explain his conciliations and rejections." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000).  Similarly, an ALJ must also consider and weigh all of the non-medical evidence before him.  Id. (citing Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983)); Cotter v. Harris, 642 F.2d 700, 707 (3d Cir. 1981).

The Third Circuit has held that access to the Commissioner's reasoning is indeed essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all
> evidence and has sufficiently explained the
> weight he has given to obviously probative
> exhibits, to say that his decision is
> supported by substantial evidence approaches
> an abdication of the court's duty to
> scrutinize the record as a whole to determine
> whether the conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978).  Although an

ALJ, as the fact finder, must consider and evaluate the medical

evidence presented, Fargnoli, 247 F.3d at 42, "[t]here is no

requirement that the ALJ discuss in its opinion every tidbit of

evidence included in the record," Hur v. Barnhart, 94 F. App'x

130, 133 (3d Cir. 2004).  In terms of judicial review, a district

court is not "empowered to weigh the evidence or substitute its

conclusions for those of the fact-finder." Williams, 970 F.2d at

1182.  However, apart from the substantial evidence inquiry, a

reviewing court is entitled to satisfy itself that the

Commissioner arrived at his decision by application of the proper

legal standards.  Sykes, 228 F.3d at 262; Friedberg v. Schweiker,

721 F.2d 445, 447 (3d Cir. 1983); Curtin v. Harris, 508 F. Supp.

791, 793 (D.N.J. 1981).

**B.    Standard for Disability Insurance Benefits**

The Social Security Act defines "disability" for purposes of

an entitlement to a period of disability and disability insurance

benefits as the inability to engage in any substantial gainful

activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death, or

which has lasted or can be expected to last for a continuous

5

period of not less than 12 months.  See 42 U.S.C. §

1382c(a)(3)(A).  Under this definition, a Plaintiff qualifies as

disabled only if his physical or mental impairments are of such

severity that he is not only unable to perform his past relevant

work, but cannot, given his age, education, and work experience,

engage in any other type of substantial gainful work which exists

in the national economy, regardless of whether such work exists in

the immediate area in which he lives, or whether a specific job

vacancy exists for him, or whether he would be hired if he applied

for work.  42 U.S.C. § 1382c(a)(3)(B) (emphasis added).

The Commissioner has promulgated regulations for determining

disability that require application of a five-step sequential

analysis.  See 20 C.F.R. § 404.1520.  This five-step process is

summarized as follows:

1. If the claimant currently is engaged in substantial
   gainful employment, he will be found "not disabled."

2. If the claimant does not suffer from a "severe
   impairment," he will be found "not disabled."

3. If the severe impairment meets or equals a listed
   impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1
   and has lasted or is expected to last for a continuous
   period of at least twelve months, the claimant will be
   found "disabled."

4. If the claimant can still perform work he has done in
   the past ("past relevant work") despite the severe
   impairment, he will be found "not disabled."

5. Finally, the Commissioner will consider the claimant's ability to perform work ("residual functional capacity"), age, education, and past work experience to determine whether or not he is capable of performing other work which exists in the national economy. If he is incapable, he will be found "disabled." If he is capable, he will be found "not disabled."

20 C.F.R. § 404.1520(b)-(f). Entitlement to benefits is therefore dependent upon a finding that the claimant is incapable of performing work in the national economy.

This five-step process involves a shifting burden of proof. See Wallace v. Secretary of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983). In the first four steps of the analysis, the burden is on the claimant to prove every element of his claim by a preponderance of the evidence. See id. In the final step, the Commissioner bears the burden of proving that work is available for the Plaintiff: "Once a claimant has proved that he is unable to perform his former job, the burden shifts to the Commissioner to prove that there is some other kind of substantial gainful employment he is able to perform." Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); see Olsen v. Schweiker, 703 F.2d 751, 753 (3d Cir. 1983).

## C. Analysis

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset of

disability, July 2, 2011. At step two, the ALJ found that
Plaintiff's impairments of status-post colon cancer, degenerative
disc disease of the lumbar spine, history of migraines, obesity,
major depressive disorder and personality disorder were severe.
At step three, the ALJ determined that Plaintiff's severe
impairments or his severe impairments in combination with his
other impairments did not equal the severity of one of the listed
impairments. At step four, the ALJ determined that Plaintiff had
no relevant past work, but found that Plaintiff retained the
residual functional capacity to work at the sedentary level[2] with
certain restrictions in jobs such as a caretaker, DOT #301.687-
010; photocopy machine operator, DOT #207.685- 014; marker, DOT
#209.587-034; taper, DOT #017.684-010; document preparer, DOT
#249.587-018; addresser, DOT #209.587-010 (step five).
Accordingly, the ALJ found that Plaintiff was not disabled.

Plaintiff presents four areas where he claims the ALJ erred
in his analysis:

1. The ALJ erred by failing to include absenteeism in

---

[2] See 20 C.F.R. § 404.1567(a) ("Sedentary work. Sedentary work
involves lifting no more than 10 pounds at a time and occasionally
lifting or carrying articles like docket files, ledgers, and small
tools. Although a sedentary job is defined as one which involves
sitting, a certain amount of walking and standing is often
necessary in carrying out job duties. Jobs are sedentary if
walking and standing are required occasionally and other sedentary
criteria are met.")

the residual functional capacity ("RFC") evaluation.

     2. The ALJ erred by finding that Plaintiff was capable of performing the jobs identified by the Vocational Expert ("VE").

     3. The ALJ erred when he improperly found that the testimony of the VE was consistent with the Dictionary of Occupational Titles.

     4. The ALJ erred by improperly accepting the numbers of jobs cited by the VE as available in the national economy.

The Court finds that the ALJ did not err in these ways, and holds that substantial evidence supports the ALJ's decision that Plaintiff retains the residual functional capacity to perform sedentary work with certain limitations.

     **1. Whether the ALJ erred by failing to include absenteeism in the residual functional capacity ("RFC") evaluation.**

The ALJ found Plaintiff's RFC to be as follows:

After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except with no climbing of ladders or crawling; occasional climbing of stairs; frequent balancing, stooping, kneeling or crouching; and occasional exposure to extreme cold, vibrations or pulmonary irritants. He is further limited to understanding, remembering and carrying out simple instructions in a work setting where co-worker and public interaction is occasional.

(R. at 24.)

Plaintiff challenges this finding because he contends that the ALJ was required to include absenteeism in Plaintiff's RFC.

Specifically, Plaintiff points out that his treating medical provider, Lariden Ruffin, APN, determined that Plaintiff would likely be absent from work about twice a month due to his impairments and treatments. Plaintiff contends that because the ALJ did not explicitly state the weight he afforded to Ruffin's two-days-a-month absenteeism opinion, the ALJ erred because this opinion addressed a functional limitation which must be included in the RFC and cannot be ignored without explanation.

Plaintiff's argument is unavailing. In making a RFC determination, the ALJ is required to do the following:

> In determining whether you are disabled, we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. By objective medical evidence, we mean medical signs and laboratory findings . . . . By other evidence, we mean . . . statements or reports from you, your treating or nontreating source, and others about your medical history, diagnosis, prescribed treatment, daily activities, efforts to work, and any other evidence showing how your impairment(s) and any related symptoms affect your ability to work. . . .

20 C.F.R. § 404.1529. The RFC reflects "what [the claimant] can still do despite [his or her] limitations," 20 C.F.R. § 416.945(a), and the controlling regulations are clear that the RFC finding is a determination expressly reserved to the Commissioner, 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), 404.1546(c), 416.946(c).

It is true, the ALJ did not specifically address Ruffin's opinion that Plaintiff was required to take unscheduled breaks every 90 minutes or be absent from work twice per month. However, when determining Plaintiff's RFC, the ALJ provided a detailed recitation of the medical evidence, as well as Plaintiff's testimony and his self-completed functional reports. The ALJ summarized the findings, and then explained why he afforded certain weight to a particular opinion by Ruffin and why he rejected another provider's four-days-a-month absenteeism limitation. In the case of Ruffin's provider report, the ALJ summarized all of Ruffin's findings related to Plaintiff's ability to sit, stand, walk, and be exposed to environmental elements such as dust and fumes. (R. at 31.) The ALJ afforded Ruffin's opinions partial weight overall, and specifically (1) afforded great weight to Ruffin's sitting limitations, (2) rejected Ruffin's standing and walking limitations finding them too permissive, (3) accepted Ruffin's environmental restrictions and added additional considerations due to Plaintiff's migraines, and (4) found the absence of any lifting, carrying, and postural limitations in Ruffin's report to be specious.

The regulations provide that the ALJ may reject the opinion of a treating medical source when it is not supported by medically

acceptable clinical or diagnostic techniques or inconsistent with
other substantial evidence regardless of the treatment
relationship.  See 20 C.F.R. § 404.1527(d)(2)-(3).  In this case,
the ALJ discussed Ruffin's medical opinions and contrasted them
with the other medical evidence in the record, as well as
Plaintiff's own statements.  In doing so, the ALJ found Ruffin's
opinions to be consistent in some ways and inconsistent in other
ways, including opinions that were not restrictive enough based on
the other evidence in the record, as well as in other areas that
were completely lacking in support.  The ALJ accordingly afforded
Ruffin's opinions as a whole partial weight.  Thus, the ALJ
satisfied his burden of explaining why he weighed all of Ruffin's
opinions as he did, an analysis which as a whole encompassed
Ruffin's absentee opinion.

     The requirement that an ALJ must specifically address a
treating physicians opinions arose from situations where the ALJ
simply ignored probative evidence or without explanation afforded
no or limited weight to a treating source's opinion.  See Cotter
v. Harris, 642 F.2d 700, 705 (3d Cir. 1981) ("[W]e need from the
ALJ not only an expression of the evidence s/he considered which
supports the result, but also some indication of the evidence
which was rejected.  In the absence of such an indication, the

reviewing court cannot tell if significant probative evidence was
not credited or simply ignored."). That is not the case here.
Cf. Crosby v. Barnhart, 98 F. App'x 923, 925 (3d Cir. 2004) ("[I]n
this case the ALJ did not reject, explicitly or implicitly, the
proffered evidence. The ALJ merely afforded Dr. Campbell's opinion
less than controlling weight, because the opinion was contradicted
by other doctors and itself had portions both supporting and
undermining Crosby's claim."); Ramos v. Berryhill, 2017 WL
3393806, at *3 (D.N.J. 2017) ("While an ALJ may not reject
probative evidence without explanation, the ALJ need not cite
specific reasons for implicitly rejecting evidence which is
irrelevant or discounted by other evidence in the record.").

Moreover, an ALJ is not required to go line-by-line through a
report and explain the weight he is providing to every one of a
medical provider's findings. See Hur v. Barnhart, 94 F. App'x
130, 133 (3d Cir. 2004) ("There is no requirement that the ALJ
discuss in its opinion every tidbit of evidence included in the
record."); Fargnoli v. Massanari, 247 F.3d 34, 42 (3d Cir. 2001)
("[W]e do not expect the ALJ to make reference to every relevant
treatment note in a case where the claimant . . . has voluminous
medical records."). The ALJ's analysis of Ruffin's reports, as he
compared them with the other evidence in the record, demonstrates

13

that substantial evidence supports his RFC determination, including the determination that Plaintiff's RFC did not require a limitation for absenteeism.  Accordingly, the ALJ did not err by not including Ruffin's absenteeism opinion in Plaintiff's RFC.

### 2. Whether the ALJ erred by finding that Plaintiff was capable of performing the jobs identified by the Vocational Expert ("VE").

Plaintiff argues that the VE provided jobs that were not at the sedentary level, and therefore the ALJ's determination that Plaintiff was capable of the jobs suggested by the VE was in error.  Plaintiff also argues that the ALJ erred in finding that Plaintiff was capable of performing the work identified by the VE because the VE acknowledged that if a person needed to tell his co-workers to go away when he wanted to be alone due to his mental impairments, that person would not be capable of any job.

Neither argument is availing.  To support the step five determination, the ALJ is only required to identify a single job within the claimant's capacity that exists in significant numbers in the national economy.  Lippincott v. Commissioner of Social Sec., 982 F. Supp. 2d 358, 384 (D.N.J. 2013) (citing 20 C.F.R. § 404.1566(b) ("Work exists in the national economy when there is a significant number of jobs (in one or more occupations)."); 20 C.F.R. § 416.966(b) (same)).  Even accepting that the caretaker,

photocopy machine operator, and marker are not sedentary jobs,
Plaintiff does not argue that a taper, document preparer, or
addresser are not sedentary jobs. Thus, the ALJ did not err by
relying up on the VE to find that jobs existed in the national
economy that Plaintiff was capable of performing.

The ALJ also did not err when he did not rely on the VE's
testimony that no jobs would accommodate a person with Plaintiff's
RFC who, at his own discretion, wanted his co-workers to go away.
The RFC limited Plaintiff to occasional interaction with co-
workers and the public – it did not allow for Plaintiff to
unilaterally demand solitude at his job when he wished to be
alone. Because Plaintiff does not dispute that several of the
jobs offered by the VE afforded minimal contact with co-workers
and the public, those jobs meet Plaintiff's RFC, and satisfy the
ALJ's burden at step five.

> **3. Whether the ALJ erred when he found that the
> testimony of the VE was consistent with the Dictionary
> of Occupational Titles.**

Plaintiff argues that a conflict existed between the VE's
testimony about available jobs and the reasoning level of those
jobs. Specifically, Plaintiff contends that the reasoning levels
of the jobs suggested by the VE were 2 and 3, while Plaintiff's

RFC mirrored a reasoning level of 1.[3] Because the reasoning level
of the jobs conflicted with Plaintiff's RFC, the ALJ had a duty to
ask the VE about the conflict. Plaintiff claims his failure to do
so warrants remand.

The Court does not agree. SSR 00-4p provides, "When a VE or
VS provides evidence about the requirements of a job or
occupation, the adjudicator has an affirmative responsibility to
ask about any possible conflict between that VE or VS evidence and
information provided in the DOT. In these situations, the
adjudicator will: Ask the VE or VS if the evidence he or she has
provided conflicts with information provided in the DOT; and If
the VE's or VS's evidence appears to conflict with the DOT, the
adjudicator will obtain a reasonable explanation for the apparent

---

[3] "The DOT is a vocational dictionary that lists and defines all
jobs available in the national economy and specifies what
qualifications are needed to perform each job." Zirnsak v.
Colvin, 777 F.3d 607, 617 (3d Cir. 2014) (citing Appendix C,
Dictionary of Occupational Titles, available at
www.occupationalinfo. org/appendxc_1.html) (other citations
omitted). The qualification categories listed by the DOT for each
job include the job's Strength level, General Educational
Development ("GED") level, and its Specific Vocational Preparation
("SVP") level. Strength level "reflects the estimated overall
strength requirement of the job." GED measures the "those aspects
of education (formal and informal) which are required of the
worker for satisfactory job performance." GED is broken into
three categories: (1) reasoning development, (2) mathematical
development, and (3) language development. Reasoning levels in the
DOT range from level 1 to level 6.

conflict."

It does not appear that the ALJ explicitly asked the VE whether the suggested jobs conflicted with the DOT. Such an error is harmless and will not result in remand when no conflict exists. Zirnsak v. Colvin, 777 F.3d 607, 617 (3d Cir. 2014) (citations omitted) ("[T]his Circuit has emphasized that the presence of inconsistencies does not mandate remand, so long as substantial evidence exists in other portions of the record that can form an appropriate basis to support the result."); Jackson v. Barnhart, 120 F. App'x 904, 906 (3d Cir. 2005) ("[E]ven if it was error for the ALJ to fail to solicit testimony about potential conflicts between this portion of the VE's testimony and the DOT, the error was harmless. Where substantial evidence supports the ALJ's opinion and where the failure to solicit the testimony contemplated in SSR 00-4p is harmless, this court will not reverse the ALJ's decision) (citing Jones v. Barnhart, 364 F.3d 501, 506 (3d Cir. 2004) ("[T]his Court has not adopted a general rule that an unexplained conflict between a VE's testimony and the DOT necessarily requires reversal.") (other citation omitted)).

Here, the ALJ's failure to ask the VE about any conflicts is harmless because there is no conflict between Plaintiff's RFC and

the reasoning level of the jobs suggested by the VE.[4]  Plaintiff's

RFC limited him to "understanding, remembering and carrying out

simple instructions."  Plaintiff argues that this limitation

aligns with Level 1 reasoning.

Level 3 reasoning is:  Apply commonsense understanding
to carry out instructions furnished in written, oral,
or diagrammatic form. Deal with problems involving several
concrete variables in or from standardized situations.

Level 2 reasoning is: Apply commonsense understanding to
carry out detailed but uninvolved written or oral
instructions. Deal with problems involving a few concrete
variables in or from standardized situations.

Level 1 reasoning is: Apply commonsense understanding to
carry out simple one- or two-step instructions. Deal with
standardized situations with occasional or no variables in or
from these situations encountered on the job.

Dictionary of Occupational Titles, Appendix C.

Plaintiff further argues that all the jobs suggested by the

VE were Level 2 and Level 3 jobs, and therefore he is not capable

of doing any of them.  The Court does not agree.

_____

[4] Procedurally, the posture of the issue in this case is the same
as in Zirnsak v. Colvin, 777 F.3d 607, 617 (3d Cir. 2014), where
the ALJ asked the VE about any potential conflicts between the
suggested jobs and the DOT, but the VE failed to raise as a
conflict the reasoning level of those jobs.  The Third Circuit
explained that because "the VE did not identify the reasoning
level inconsistency at the hearing, the ALJ did not elicit an
explanation for that inconsistency or explain in its decision how
the conflict was resolved," and "[t]herefore, we must determine
whether there is substantial evidence in the record that still
supports the ALJ's determination."  Zirnsak, 777 F.3d at 617
(citations omitted).

18

First, the Third Circuit observed that "there is no bright-line rule stating whether there is a *per se* conflict between a job that requires level 3 reasoning and a finding that a claimant should be limited to simple and routine work." Zirnsak, 777 F.3d at 618. Second, Plaintiff has not pointed to any authority that classifies the limitation of "understanding, remembering and carrying out simple instructions" to only Level 1 jobs. Third, the positions are all classified as "unskilled," which suggests that the jobs require minimal reasoning ability, regardless if they are classified at the 2 or 3 reasoning level. See 20 C.F.R. § 416.968(a) ("Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time."); Money v. Barnhart, 91 F. App'x 210, 215 (3d Cir. 2004) ("Money makes the assumption that even a reasoning level of 2, where 1 is the lowest possible level of reasoning, is incompatible with the ALJ's decision in her RFC that her jobs must be simple. However even level two only requires a person to '[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions[; d]eal with problems involving a few concrete variables in or from standardized situations.' Working at reasoning level 2 would not contradict the mandate that her work be simple, routine and repetitive.").

19

Finally, as discussed in <u>Zirnsak</u>, Plaintiff has not articulated how he would not be capable of the suggested jobs at their reasoning levels, considering that he has an associate's degree and a bachelor's degree, and in June 2015 he reported that he played chess, read chess books, attended Bible study, and participated in church missions. (R. at 26.) <u>See</u> <u>Zirnsak</u>, 777 F.3d at 618–19 (noting that Zirnsak's counsel did not question the VE regarding inconsistencies at all, and that Zirnsak does not seriously argue that she is incapable of performing the jobs - order clerk, charge account clerk, or telephone quotation clerk - recommended by the VE, and the record establishes that Zirnsak could perform these jobs since she Zirnsak completed tenth grade and testified that she received her GED or further education).

Therefore, substantial evidence in the record supports the finding that Plaintiff is capable of performing the jobs suggested by the VE, and the ALJ's failure to ask the VE about possible conflicts is harmless due to the lack of any actual conflict.

> **4. Whether the ALJ erred by accepting the numbers of jobs cited by the VE as available in the national economy.**

Plaintiff's final argument on appeal is that he questions the source and validity of the VE's statistics that purport to support the availability of jobs in the national economy. Plaintiff

points out that the jobs identified by the VE have not been

updated since 1977 (caretaker, photocopy machine operator, marker

and addresser[5]) and 1986 (taper[6] and document preparer[7]) and are

_____

[5] The VE testified the following job was available nationally in
the numbers indicated:

209.587-010 ADDRESSER (96,000 jobs nationally):  Addresses by hand
or typewriter, envelopes, cards, advertising literature, packages,
and similar items for mailing. May sort mail.

[6] The VE testified the following job was available nationally in
the numbers indicated:

017.684-010 TAPER, PRINTED CIRCUIT LAYOUT (206,000 jobs
nationally): Places (tapes) adhesive symbols and precision tape on
sheets of mylar in conformance with preliminary drawing of printed
circuit board (PCB) to produce master layout: Places, aligns, and
secures preliminary drawing of PCB and successive layers of
transparent sheets of mylar on lighted drafting table, using
register bar. Selects specified symbols and width of tape to
indicate peak voltage potential. Cuts tape and places tape and
adhesive symbols on specified sheets of mylar to outline board
size, to indicate connector pads, placement of various components,
and to trace circuitry of PCB as indicated on underlying
preliminary drawing, using utility knife, precision grid, and
straightedge. Places specified adhesive identification and
reference numbers on master layout. Reproduces blueprint copy of
master layout, using print machine. Inspects copy to verify
accuracy.

[7] The VE testified the following job was available nationally in
the numbers indicated:

249.587-018 DOCUMENT PREPARER (38,000 jobs nationally): Prepares
documents, such as brochures, pamphlets, and catalogs, for
microfilming, using paper cutter, photocopying machine, rubber
stamps, and other work devices: Cuts documents into individual
pages of standard microfilming size and format when allowed by
margin space, using paper cutter or razor knife. Reproduces
document pages as necessary to improve clarity or to reduce one or
more pages into single page of standard microfilming size, using

woefully outdated – e.g., the addresser job is someone who

addresses by hand or typewriter envelopes and similar items, and

the VE testified that there are 96,000 of such jobs in the

national economy.  Plaintiff cites to case law from other circuits

that have similarly questioned the SSA's use of the DOT for job

descriptions and the questionable statistics for those jobs.  <u>See,</u>

<u>e.g.</u>, <u>Alaura v. Colvin</u>, 797 F.3d 503, 507–08 (7th Cir. 2015)

(Posner, J.) ("We have recently expressed concern with the source

and validity of the statistics that vocational experts trot out in

social security disability hearings.  The problem appears to be

that the only reliable statistics are census data for broad

categories of jobs, rather than for jobs in the narrower

categories that the applicant for benefits is capable of doing.

Typically, it appears, the vocational expert simply divides the

number of jobs in the broad category that includes the narrow

category of jobs that the applicant can perform by the number of

narrow categories in the broad category, thus assuming that each

---

photocopying machine. Stamps standard symbols on pages or inserts
instruction cards between pages of material to notify MICROFILM-
CAMERA OPERATOR (business ser.) 976.682-022 of special handling,
such as manual repositioning, during microfilming. Prepares cover
sheet and document folder for material and index card for company
files indicating information, such as firm name and address,
product category, and index code, to identify material. Inserts
material to be filmed in document folder and files folder for
processing according to index code and filming priority schedule.

narrow category has the same number of jobs as each other narrow category—which is preposterous. A vocational expert's stated number of jobs in a narrow category seems likely, therefore, to be a fabrication." (internal citations omitted).); Id. at 508 ("It's hard to believe that, as the vocational expert testified in this case, there are 200,000 people in the United States for whom this is a full-time job. And does anyone use a typewriter any more? Most addressing nowadays is either personal, as when one is sending a Christmas or get-well card, or automated, as in the case of business mailings, including mass mailings of advertisements or magazines.").

Even though this Court recognizes the concerns expressed by former Judge Posner and the Seventh Circuit, and echoed by Plaintiff in this case, the SSA Regulations direct that an ALJ is to take notice of job information available from various governmental and other publications, such as the Dictionary of Occupational Titles, County Business Patterns, Census Reports, Occupational Analyses, and Occupational Outlook Handbook, as well as engage the services of a vocational expert. 20 C.F.R. § 404.1566(b). It is not for this Court to reform the methodology that SSA VEs use to determine available and appropriate jobs in the national economy that match a claimant's RFC.

The Court also cannot otherwise direct that an ALJ should not consider the DOT and VE testimony when performing the step five analysis, which would be in contravention of SSA regulations. See, e.g., Weir v. Colvin, 2016 WL 4083524, at *3 (W.D. Wis. 2016) (stating that Weir's argument – taking issue with the VE's testimony regarding the number of jobs available to her in Wisconsin – was well taken, and noting that the Seventh Circuit has recently articulated concerns with VE testimony, both in terms of calculating the number of jobs available in the national economy and relying too heavily on vague references to their own "experience" to support their testimony, but finding that "Weir's criticism of the VE's methodology is not a basis for remand until appellate precedent instructs that relying on the methodology is reversible error"); cf. Rivera v. Berryhill, 242 F. Supp. 3d 1226, 1242 (D.N.M. 2017) ("In sum, while the Court takes note of the lack of confidence expressed by the Seventh Circuit towards VEs and the testimony they offer, Plaintiff has cited nothing indicating that the Tenth Circuit harbors these same reservations. To the contrary, the Tenth Circuit is incredibly deferential towards VE testimony so long as the ALJ complies with the mandates of Haddock and SSR 00-4p. Indeed, what would be the point of vocational testimony (or expert testimony in general) if it could

not reach beyond matters already established through administrative (or judicial) notice?" (internal citations and quotations omitted)); <u>Lillis v. Colvin</u>, 2017 WL 784949, at *5 (D. Conn. 2017) ("[I]t would be helpful if the Second Circuit would weigh in on this precise issue and engage thoroughly the reasoning in Judge Posner's opinion in <u>Alaura</u>. As the law stands now, though, this Circuit does not require the level of scrutiny of a VE's methods Plaintiff seeks."); <u>Feeley v. Commissioner of Social Sec.</u>, 2015 WL 3505512, at *11 (D.N.J. 2015) (finding that two of the jobs offered by the VE were obsolete, but two others did "not unlock memories of the Reagan era," and noting that the "O*Net seems to have replaced the Dictionary of Occupational Titles," and the "SSA may wish to reconsider its persistent reliance on the DOT in disability proceedings," and further noting that the "SSA itself has stated (albeit in a notice in the Federal Register more than six years ago) that it 'plans ... to replace the Dictionary of Occupational Titles'" (internal citations omitted)).

Accordingly, the Court does not find that the ALJ's reliance on the VE's testimony to be in error based on Plaintiff's general dissatisfaction with the SSA's reliance on the VE's use of the DOT and current statistical methodologies.[8]

_____

[8] Plaintiff has not specifically challenged the reliability of the

### III. Conclusion

For the reasons expressed above, the ALJ's determination that Plaintiff is not totally disabled is supported by substantial evidence. The decision of the ALJ is therefore affirmed.

An accompanying Order will be issued.


Date: __September 27, 2017__                    ___s/ Noel L. Hillman___
At Camden, New Jersey                         NOEL L. HILLMAN, U.S.DJ.

---

job numbers of the three sedentary positions suggested by the VE, and therefore the Court cannot determine sua sponte whether the VE's numbers are valid or the job descriptions accurate.